JUSTICE WEBER
concurs and dissents as follows:
I dissent from the holding of the majority opinion on Issue V - Does the Montana Unfair Trade Practices and Consumer Protection Act (MCPA) apply to consumer loans by banks? I concur in the balance of the holdings of the majority opinion.
The majority concludes that the MCPA applies to consumer loans by banks in the lending and collecting of such loans. I will first summarize my reasons for disagreeing with that conclusion. The primary question is whether a bank consumer loan falls within the provisions of Section 30-14-133, MCA, which applies to any person who purchases or leases goods or services primarily for personal, family, or household purposes. The majority has failed to demonstrate how the borrowing of money by a consumer is the purchasing or leasing of goods or services.
Before discussing the specific statutory sections with which we are directly involved, I think it appropriate to make a few comments about the MCPA. That Act was adopted in 1973 with the aim of prohibiting unfair trade practices with provisions for investigation of such practices and penalties for violations. Title 30, Chapter 14, Parts 1-2. The Act has forty-two different sections which describe the means of protecting the consumer by action on the part of the Department of Commerce, the Attorney General, and the county attorneys of the fifty-six counties. These sections provide for injunctions, restraining *332 orders, civil penalties up to $10,000, possible criminal convictions and criminal fines with imprisonment. The basic thrust of the Act is protection of the consumer by enforcement through various governmental agencies.
Before discussing the one specific code section in that Act which applies to the consumer, I emphasize the apparent result of the majority opinion. In view of the broad definition of “services” in the majority opinion, I assume that the majority would apply the Act to the following: 1) all activities of any kind of banks and loaning institutions, including all aspects of loan and mortgage and other security financing; 2) all types of services by hospitals, nursing homes, and retirement homes; 3) all types of services rendered by such people as medical doctors, dentists, accountants, architects, attorneys, and engineers. The list is almost unlimited in those “services” which might be included. Why is it important to consider such “services?” The answer is the treble damages and attorney fees provisions of Section 30-14-133, MCA, which are as follows:
(1)... The court may, in its discretion, award up to three times the actual damages sustained and may provide such equitable relief as it considers necessary or proper.
(3) In any action brought under this section, the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action.
In the past, very few actions have been brought by consumers under the Act. Because of the great benefit of both treble damages and attorney fees, I suggest that those having claims against any of the above listed parties will conclude that the best procedure is to seek to come under the Act. I conclude that such a striking change in the practice in Montana should be left to the legislature.
I will not discuss the particular sections of the Act which are directly pertinent. The key consumer section is Section 30-14-133, MCA, which provides in pertinent part:
Damages — notice to public agencies — attorney fees — prior judgment as evidence. (1) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money ... as a result of the use ... by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual... action ... in the district court of the county in which the seller or lessor resides . . .
*333 This section applies to any person who purchases or leases goods or services primarily for personal, family, or household purposes. Clearly the making of a consumer loan from a bank does not constitute a purchase or lease of goods nor a lease of services. The remaining question is whether a consumer making a bank loan has made a purchase of services. As pointed out in the majority opinion, this issue has not been considered in Montana and very few other jurisdictions have considered the issue.
The majority relies upon Smith v. Commercial Banking Corp. (3rd.Cir. 1989), 866 F.2d 576, which involves the Pennsylvania consumer protection statutes. Smith points out that section 2 of the Pennsylvania act enumerates seventeen specific acts which constitute unfair or deceptive acts or practices and then points out that Smith contends that Fidelity’s conduct falls within the catch-all provisions which make unlawful engaging in any other fraudulent conduct which creates a likelihood of confusion or misunderstanding. See 73 Pa.Stat.Ann. Section 201-3 (Purdon Supp. 1992) We have no specific act provisions of that nature in our MCPA. The only definitional statute regarding unfair acts is Section 30-14-103, MCA, which provides:
Unlawful practices. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
I do not find it appropriate to so generalize in accepting Pennsylvania cases, federal and state, as authority where the central provisions of the act are so strikingly different.
The majority points out that in Riverside Nat’l Bank v. Lewis (Tex. 1980), 603 S.W.2d 169, the Texas court concluded that the borrowing of money was neither a “good” or a “service” (both of which are used in Section 30-14-133, MCA), and stated:
Money, as money, is quite obviously neither work nor labor. Seeking to acquire the use of money likewise is not a seeking of work or labor. Rather, it is an attempt to acquire an item of value. We hold that an attempt to borrow money is not an attempt to acquire either work or labor as contemplated in the DTPA.
Riverside, 603 S.W.2d at 174. The majority concludes that the Texas statutes define more restrictively than ours. It also points out that Riverside was limited to its facts. I would point out that the above quote has nothing to do with the statute but does constitute an intelligent analysis of the nature of goods and services as compared *334 to money and seeking to acquire the use of money. This analysis does contradict the holding of the majority.
Ultimately the majority refers to 1981 Pennsylvania cases which held that lending and collecting money was -within the definition of service and then proceeds to conclude that our Montana Act and its definition of services applies to consumer loans by banks. I strongly disagree with that conclusion.
In analyzing whether there has been a purchase of services where the bank makes a consumer loan, I point out Section 30-14-133, MCA, provides that the action is to be brought in the district court of the county in which the “seller or lessor” resides. Under common usage, I do not believe that the term seller or lessor would be considered as including a bank which makes consumer loans.
Before attempting to reach a conclusion regarding the extent of the purchase or leasing of goods and services as defined in Section 30-14-133, MCA, we should also consider that under such section, a consumer is entitled to recover against another person who uses a method, act, or practice which is declared unlawful under Section 30-14-103, MCA, quoted above. In order to determine what trade and commerce are meant to be under Section 30-14-133, MCA, we must consider Section 30-14-102, MCA, which contains the following definition:
(6) “Trade” and “commerce” mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, persona, or mixed, and any other article, commodity, or thing of value, wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state.
From the statutory wording it is clear that unfair methods of competition and -unfair or deceptive acts are limited to those involved in the conduct of “trade” and “commerce” as defined in Section 30-14-102, MCA. This requires our consideration of that section in greater detail.
Section 30-14-102(6), MCA, defines trade and commerce as advertising, offering for sale, sale and distribution of services and property. On its face, the making of a consumer loan by a bank does not fit within the classification of advertising, offering for sale, sale, or distribution of services or other property. Because there is no clear stated intent to include bank loans or consumer loans or bank or consumer activities, I think it essential to consider the history of the MCPA during the approximate 20 years since it was enacted.
*335 Since 1973 there has been no legislative revision indicating a specific intent that a bank loan should constitute a purchase of services within the definition of the MCPA. That conclusion is fortified by a consideration of the regulations adopted dining this 20-year period by the Department of Commerce of Montana. These regulations are set forth in 8.78.101-406, ARM. A number of these regulations specifically refer to various aspects of the sale of merchandise, including its advertising and representations with regard to the same. Next, there are a number of regulations which apply to motor vehicles and cover the sales, repairs, maintenance and service of motor vehicles. These regulations are limited to the services in connection with the sales, repairs and maintenance of such vehicles. There are also regulations covering reporting agencies and fees which are not directly applicable. A review of these Rules establishes that the enforcement on the part of the Department of Commerce has been quite limited. Clearly the Department has not concluded that the making of a consumer bank loan constitutes services under the MCPA, nor have they established any other regulations demonstrating that similar services are considered as coming under the MCPA.
As I again examine the definition of trade and commerce in Section 30-14-102(6), MCA, I would follow the lead of the Department of Commerce and limit the interpretation of the sale of services to services relating to property, tangible or intangible, real, personal or mixed, and other articles and commodities in commerce. If that approach is applied to Section 30-14-102(6), MCA, then the same approach properly would be applicable to Section 30-14-133, MCA. We properly could conclude that under Section 30-14-133, MCA, the borrowing of money from a bank on a consumer loan is not a purchase of goods or services. That conclusion is consistent with the reference to “seller” or “lessor” in the code section. In view of the history of the past twenty years, and the potential impact of the majority conclusion, I would leave to the legislature the determination of whether or not it is appropriate to extend the MCPA to consumer loans made by banks and to other types of services rendered within the state.
I would conclude that the MCPA does not apply to consumer loans by banks.